## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## PINE BLUFF DIVISION

JACKIE BREEDEN, JR.
ADC #151498                                                    PETITIONER


VS.                          5:14CV00244 DPM/JTR


WENDY KELLEY, Director,
Arkansas Department of Correction[1]                          RESPONDENT


### RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge D. P. Marshall Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the entry of this Recommendation. The failure to timely file objections may result in waiver of the right to appeal questions of fact.

### I. Background

Pending before the Court is a § 2254 habeas Petition filed by Petitioner, Jackie Breeden, Jr. ("Breeden"). *Doc. 1.* Before addressing Breeden's habeas

---

[1] Wendy Kelley is automatically substituted as Respondent pursuant to Fed. R. Civ. P. 25(d).

claims, the Court will review the relevant procedural history of this case in state court.

On September 14, 2011, a Benton County jury convicted Breeden of the rape of his minor daughter. *Tr. 106*. He received a life sentence. *Id.*

Breeden appealed to the Arkansas Supreme Court, where his attorney filed a "no-merit" brief pursuant to Ark. R. Sup. Ct. 4-3(j)(1) and *Anders v. California*, 386 U.S. 738 (1967). Breeden then filed *pro se* points for reversal. On April 11, 2013, the Arkansas Supreme Court affirmed Breeden's conviction. *Breeden v. State*, 2013 Ark. 145, 427 S.W.3d 5 (2013).

On May 22, 2013, Breeden filed a *pro se* Rule 37 Petition in Drew County Circuit Court raising various postconviction claims. *Rule 37 Tr. 27.* On July 17, 2013, the trial court entered an order denying Rule 37 relief. *Rule 37 Tr. 80.* On April 10, 2014, the Arkansas Supreme Court affirmed the denial of Rule 37 relief. *Breeden v. State*, 2014 Ark. 159, 432 S.W.3d 618 (2014).

Breeden initiated this *pro se* habeas action on June 23, 2014. *Doc. 1*. In his Petition, he argues that: (1) he was denied his constitutional right to be present during the trial testimony of his ex-wife, who he alleges was the prosecution's "chief witness;" (2) his trial counsel was ineffective; and (3) he underwent an unconstitutional custodial interrogation that was introduced into evidence during

his trial. *Doc. 1.* In Respondent's Response, she argues that Breeden's claims either fail on the merits or are procedurally defaulted. *Doc. 7.*

For the reasons discussed below, the Court recommends that the Petition for a Writ of Habeas Corpus be denied, and that the case be dismissed, with prejudice.

## II. Discussion

### A.   The Denial of Breeden's Constitutional Right To Be Present At Trial

According to Breeden, he was removed from the courtroom during the testimony of his ex-wife, Paula Breeden ("Paula"), in violation of his rights under the Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment.[2]

The victim, Breeden's daughter, was fifteen-years old at the time of trial and was the first prosecution witness. *Tr. 275.* She testified that, when she was "about eleven," her father began having sexual intercourse with her. *Tr. 278.* It usually happened "two to three times a week," and continued until she was fourteen-years old. *Id.*

---

[2] The Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment provide a criminal defendant with the constitutional right to be present at all stages of trial: "The Supreme Court has long held that, 'One of the most basic of the rights guaranteed by the Confrontation Clause [of the Sixth Amendment] is the accused's right to be present in the courtroom at every stage of his trial.' The right to be present, which has a recognized due process component, is an essential part of the defendant's right to confront his accusers, to assist in selecting the jury and conducting the defense, and to appear before the jurors who will decide his guilt or innocence." *United States v. Ward*, 598 F.3d 1054, 1057-58 (8th Cir. 2010) (internal citations omitted) (*quoting Illinois v. Allen*, 397 U.S. 337, 338 (1970)).

Paula was the prosecution's second witness. She was married to Breeden for fourteen years, and they had four children.[3] *Tr. 291*. According to Paula, Breeden was more possessive and controlling of the victim than his other three children. *Tr. 294*.

In August of 2010, when the victim was fourteen, Paula overheard her having a sexually-inappropriate telephone conversation with her boyfriend. After Paula confronted her about the conversation, the victim said she learned about the things she described in the telephone conversation because "her dad had been doing them to her." *Tr. 295*. Paula went to her daughter's school counselor, who passed the information along to the child abuse hotline. *Tr. 295*.

At Breeden's trial, Paula was asked if Breeden ever said anything "strange" to her about the victim. Paula recalled a morning when she took a bath after having sex with Breeden. Because their mobile home had a small water heater, she explained that her children often shared bath water. As she was taking her bath, Breeden told her that she should not let the victim take a bath after her, because "what would happen if she [the victim] got pregnant by her dad; what would people think." *Tr. 296*.

Breeden contends that he was involuntarily removed from the courtroom during Paula's testimony. In support of this assertion, he relies on three letters

---

[3] She filed for divorce after Breeden was arrested, and was divorced by the time of trial. *Tr. 291*.

4

which were made a part of the record in his Rule 37 proceeding: (1) an unsworn letter from his father, dated May 8, 2013, stating that "[d]uring trial [Breeden] was removed from the courtroom;" (2) an unsworn letter from his step-mother, dated May 8, 2013, stating that "[j]ust before his [Breeden's] wife [Paula] testified Jackie [Breeden] was removed from the courtroom . . . and after Jackie's wife [Paula] finished [testifying] Jackie [Breeden] returned to the courtroom;" and (3) an unsworn letter from his mother, dated April 30, 2013, stating that "[Breeden] wasn't allowed in [the] courtroom [during the testimony of] . . . [Paula]." *Doc. 1 at 58-61.*

In Breeden's Rule 37 appeal, the Arkansas Supreme Court found there were *no facts* in the record to support his claim that his Confrontation Clause rights were violated:

> [T]here is no factual substantiation for the underlying allegation as the trial record does not support his claim that he was not present in the courtroom during the testimony of his former wife. During Ms. Breeden's testimony during the guilt phase of the trial, she was asked to identify appellant, and she pointed him out in the courtroom. Then, prior to reading the jury's verdict, the trial court stated for the record that appellant was present in the courtroom. Immediately after the guilty verdict was announced, the trial court proceeded with the sentencing phase of the trial and the State called Ms. Breeden as its first witness. Because the trial record does not support appellant's allegations, his argument must fail.

*Breeden*, 2014 Ark. 159 at *4, 432 S.W.3d at 623.

On federal habeas review, the Court must "assume that any facts found by the state court [are] correct," and the petitioner "bears the burden to show . . . by clear and convincing evidence that such factual conclusions below were incorrect."

*Nash v. Russell*, 807 F.3d 892, 897 (8th Cir. 2015) (*citing* 28 U.S.C. § 2254(e)(1)).

The Arkansas Supreme Court made the factual finding that Breeden was *not* removed from the courtroom during *any* of Paula's trial testimony. This "presumptively correct" factual finding is directly supported by the trial transcript, which makes it clear that, during Paula's testimony, she identified Breeden by pointing him out at the conclusion of her direct examination.[4] *Tr. 303*.

The *unsworn* statements by Breeden's family members fall far short of the kind of "clear and convincing evidence" necessary to call into question the Arkansas Supreme Court's finding, *supported by the transcript*, that Breeden was present during Paula's trial testimony. Thus, the reasons given by the Arkansas Supreme Court for rejecting Breeden's Confrontation Clause claim were neither "contrary to" nor an "unreasonable application of clearly established federal law," and were not based on an "unreasonable determination of the facts." *See* 28 U.S.C. § 2254(d) and (e).

Accordingly, Breeden's habeas claim, based on an alleged violation of the Confrontation Clause, is without merit.

### B.    Ineffective Assistance of Counsel Claims

Breeden raises four separate ineffective assistance of counsel claims. A habeas petitioner claiming ineffective assistance of counsel must show that: (1) his

---

[4] During the victim's direct examination, she also identified Breeden, who was seated in the courtroom. *Tr. 285.*

or her lawyer's representation fell below an objective standard of reasonableness; and (2) the lawyer's deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 688 (1984).[5]

While the *Strickland* standard is deferential, in and of itself, federal habeas review of an ineffective assistance of counsel claim is "doubly deferential" to the state court's decision:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, [habeas] review is doubly so.

*Harrington v. Richter*, 562 U.S. 86, 105 (2011) (internal citations and quotations omitted).

### 1.    Trail Counsel's Alleged Failure to "Communicate"

First, Breeden argues that his lawyer was ineffective because he did not "communicate" with him and "ignored" him. *Doc. 1 at 6-7*. In his Rule 37 appeal, the Arkansas Supreme Court rejected this argument due its "conclusory" nature:

> Here, appellant's arguments are limited to conclusory allegations, and he fails to provide any facts to support his claims. He does not describe any convincing defense that counsel could have presented, show how further investigation would have been fruitful, or state how the defense suffered from any lack of communication.

*Breeden*, S.W. at 626-27.

---

[5] Under the first prong of *Strickland*, "the court must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance, while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions." *Abernathy v. Hobbs*, 748 F.3d 813, 816 (8th Cir. 2014) (internal quotations and citations omitted). Under the second prong of *Strickland*, "the petitioner must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 816-17.

In his habeas Petition, Breeden reasserts the same conclusory allegation that "[c]ounsel would not discuss the case or charges with me." *Doc. 1 at 24*. He does not develop this argument by providing any facts to support his claim or any explanation of specifically how his attorney allegedly failed to communicate and how, but for this alleged lack of "communication," the result of trial would have been different.

In Breeden's Rule 37 appeal, the Arkansas Supreme Court identified and applied the correct *Strickland* standard in rejecting his first ineffective assistance of counsel claim. Nothing in Breeden's current argument addresses how the Arkansas Supreme Court unreasonably applied *Strickland* or explains how its decision was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d) and (e).

Accordingly, the Court concludes that this ineffective assistance of counsel claim is without merit.

### 2.    Trial Counsel's Alleged Refusal to Call Exculpatory Witnesses

Next, Breeden argues that his lawyer "refused to call exculpatory witnesses." *Doc. 1 at 6*. At trial, Breeden testified in his own defense and denied any sexual contact with his daughter. On cross-examination, he asserted that Paula manipulated the victim into claiming Breeden had sexual contact with her to

prevent him from sharing in a "large inheritance" that Paula received from her deceased mother.

Breeden's mother, Sonja Breeden, lived with Breeden's family in their trailer for several years. *Tr. 334-338.* She testified that she did not see anything suspicious or "untoward" during her time living in the trailer.

Breeden makes the entirely conclusory allegation that his mother "was not utilized properly by my attorney." *Doc. 1 at 72.* He also claims that one of his friends, Rick Sayre: (1) knew that Breeden and his wife were "having problems;" (2) saw "bank documents" showing "suspicious activity;" and (3) warned Breeden that "something was about to happen." Breeden faults his attorney for "not get[ting] [Sayre] to testify on any of it."

Under *Strickland*, trial counsel's defense strategy and decisions about whether to call witnesses are tactical matters that are entitled to "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *See United States v. Thomas*, 992 F.2d 201, 205 (8th Cir. 1993) (*quoting Strickland*, 466 U.S. at 689). After carefully reviewing the record, there is nothing that suggests the outcome of Breeden's trial would have been different if his trial counsel had called Sayre to testify about the matters raised by Breeden in his habeas papers. Similarly, Breeden's claim that his trial counsel

failed to "utilize" his mother properly as a witness is so conclusory that it makes the claim impossible to understand, much less evaluate.

Accordingly, this ineffective assistance of counsel claim is without merit.

### 3.    Trial Counsel's Withdrawal of the Motion to Suppress Breeden's Custodial Statement

Breeden argues that his trial counsel was ineffective for withdrawing a Motion to Suppress the statement Breeden gave to Benton County Sheriff's Investigator Wes Bryant on August 26, 2010.

At trial, Investigator Bryant testified that, after talking with Paula Breeden about her daughter's allegations of being raped by her father, he had Paula make three "monitored" telephone calls to Breeden "to confront him with, you know, what's been said [by the victim] and just see what his reaction was to it." *Tr.321-322*. "Not a whole lot" was said by Breeden in these calls. Before she made the final call, Investigator Bryant "requested her [Paula] to ask him [Breeden] to come up [to the sheriff's office] and speak with me." *Tr. 322*.

On August 26, 2010, at approximately 6:45 p.m., Breeden voluntarily went to the Benton County Sherriff's Office to talk to Investigator Bryant. Breeden was placed in a room for a taped interview with Investigator Bryant.

During his trial testimony, Investigator Bryant admitted that he did *not* administer *Miranda* warnings to Breeden before the interview began. According to Investigator Bryant, "[b]efore I started the interview, I made a point of telling him

[Breeden] he was not under arrest and he was free to leave whenever he chose to and then I reinforced that again — after he told me he understood that, I reinforced the fact that, you know, he, again, was not under arrest." *Tr. 323-24.* Investigator Bryant stated that he would have "allowed [Breeden] to leave" if he had changed his mind about the interview. When asked by the prosecutor to elaborate on why he did not administer *Miranda* warnings before the interview began, Investigator Bryant stated:

> I had already spoken to — to Paula and to — seen [the victim's] interview and I really was torn at that point you know, which — which way the case could go. So, when I sat down with him [Breeden], you know, I hadn't planned on arresting him at that point. Sometimes when you read *Miranda*, walls are — can be put up between you and the person you're — you're speaking to. So, you know, at that point I hadn't planned on arresting him, and I really wanted to get his side of the story to find out what was really going on. So, that's why I chose to do it later.

*Tr. 328.*

Jurors were then allowed to listen to the audio of this interview, and they each were provided with a transcript to read as it was played. The transcript of the interview is thirty-two pages long. *Tr. 425-456.* At the beginning of the interview, Investigator Bryant tells Breeden: "I wanna tell you you're not under arrest . . . Paula is the one I assume called you and told you I wanted to talk to you?" *Tr. 427.* After Breeden answers "yes," Investigator Bryant states that he knows there are "two sides to every story," and that he "wanted to let you [Breeden] know, um, that you're not under arrest. And you're free to leave whenever you want. I mean, do you understand that?" *Tr. 427.* Breeden answers "Yes." *Id.*

11

During most of the interview, Breeden denies doing anything inappropriate with his daughter. However, in the final third of the interview, he admits to having sexual contact with her. *Tr. 444-456*. At the end of the interview, Investigator Bryant tells Breeden that "you've obviously admitted to a, a pretty serious crime. Okay? And at this point, uh, you know, I'm gonna have to . . . take you into custody. Okay? I'm gonna read you your rights now." *Tr. 453*. After being advised on his *Miranda* rights, Breeden declines to continue speaking with Investigator Bryant and requested a lawyer. *Tr. 453-454*. The interview concluded and Breeden was arrested.

On January 13, 2011, Breeden's attorney filed a Motion to Suppress Custodial Statement. *Tr. 54-55*. On April 19, 2011, the day before the scheduled suppression hearing, Breeden's attorney withdrew the Motion "after further research into the facts and law." *Tr. 78*.

In Breeden's Rule 37 appeal, he argued that his trial counsel was ineffective for withdrawing the Motion to Suppress. According to Breeden, his interview with Investigator Bryant was a "custodial interrogation" that required Investigator Bryant to administer *Miranda* warnings before the interview began. Breeden also asserted that Investigator Bryant denied his request to make a phone call and also threatened to arrest Breeden's parents.[6]

---

[6] The transcript of the interview does not reflect Breeden asking to make a phone call or Investigator Bryant threatening to arrest Breeden's parents.

The Arkansas Supreme Court rejected this argument, concluding that, because Breeden was not "in custody" during the interview, Investigator Bryant was not required to give Breeden *Miranda* warnings:

> *Miranda* warnings are required only in the context of a custodial interrogation. A person is in custody for purposes of the *Miranda* warnings when he or she is deprived of his freedom by formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. In resolving the question of whether a suspect was in custody at a particular time, the only relevant inquiry is how a reasonable person in the suspect's shoes would have understood the situation. As previously noted, appellant was asked to go to the sheriff's office by his former wife, he arrived at the office of his own volition, and he was told by the investigating officer that he could leave at any time. In view of these circumstances, appellant was not in custody when he gave his statement such that the procedural safeguards of *Miranda* were inapplicable. Because appellant cannot establish that a motion to suppress would have had merit, he has failed to state a claim for ineffective assistance of counsel.

*Breeden*, *supra*, 432 S.W.3d at 624 (internal citations and quotations omitted).

In determining if a person is "in custody," for purposes of *Miranda*, the ultimate question is whether: (1) there is a formal arrest; or (2) there is "restraint on freedom of movement of the degree associated with a formal arrest." *United States v. Williams*, 760 F.3d 811, 814 (8th Cir. 2014). *In Williams, supra*, the Court held that: "[t]o answer [this] question, we consider the totality of the circumstances that confronted the defendant at the time of questioning, and inquire whether a reasonable person would have felt that he or she was free to terminate the interview and leave." *Id.*

In *Yarborough v. Alvarado*, 541 U.S. 652, 662-666 (2004), the Court emphasized that the *Miranda* custody standard is a "general rule" subject to

"differing indications" about "how a reasonable person in the suspect's situation would perceive his circumstances." As a result, when federal habeas courts are required to consider whether state courts properly resolved *Miranda* issues, they must give "more leeway [to the state] courts . . . in reaching outcomes in case-by-case judgments[.]" *See id.* at 665. Thus, as long as the state court's resolution of the "custodial status" issue "fits within the matrix of [the Supreme Court's] prior decisions," habeas relief under the deferential AEDPA standard is not warranted. *See id. at 665.*

Investigator Bryant testified that, in interviewing suspects, he had reservations about giving them their *Miranda* warnings because he believed it "put up walls" with them. Of course, those are the very walls *Miranda* was designed to erect to protect a suspect *if* he indeed is in a *custodial interrogation*. Similarly, Investigator Bryant's *subjective opinion* that Breeden was *not* in custody, during the interview, is of *no relevance* in making the *objective determination* of whether a "reasonable person" would have felt free to terminate the interview and leave.

Questioning a suspect in a police station, in and of itself, does not require the issuance of *Miranda* warnings. *See California v. Beheler*, 463 U.S. 1121, 1125 (1983) ("We have explicitly recognized that *Miranda* warnings are not required simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect.") (internal alterations and

14

quotations omitted). Even confrontation of a suspect with accusatory questioning, or evidence of guilt, is not dispositive of a suspect's custodial status. *See Stansbury v. California*, 511 U.S. 318, 325 (1994) ("Even a clear statement from an officer that the person under interrogation is a prime suspect is not, in itself, dispositive of the custody issue, for some suspects are free to come and go until the police decide to make an arrest."); *Oregon v. Mathiason*, 429 U.S. 492 (1977) (suspect at a police station was not in custody despite being informed that he was a suspect and confronted with fabricated fingerprint evidence linking him to the crime). *See also United States v. Brave Heart*, 397 F.3d 1035 (8th Cir. 2005) (suspect was not in custody during a stationhouse interview where he acknowledged he was there voluntarily, despite the interrogating officer's unstated intent to arrest the suspect at the conclusion of the interview — the suspect was not "physically restrained in any way" and was treated "calmly and respectfully at all times").

In *United States v. Huether*, 673 F.3d 789, 794 (8th Cir. 2012), the Eighth Circuit identified the following factors that should be considered in deciding if the suspect was "in custody" when he was questioned: (1) whether the suspect was informed that he was free to leave and that answering was voluntary; (2) whether the suspect possessed freedom of movement; (3) whether the suspect initiated contact or voluntarily acquiesced; (4) whether strong arm tactics or strategies were employed; (5) whether the atmosphere was police dominated; and (6) whether the

15

suspect was placed under arrest at the end of questioning. "The first three ... factors which, if present, mitigate against the existence of custody ... the last three ... are aggravating factors which, if present, aggravate the existence of custody." *Id.*

Similarly, in *United States v. Hinkley*, 803 F.3d 85, 90-91 (1st Cir. 2015), the First Circuit identified a non-exclusive list of what it deemed were some of the most important factors that must be considered in determining if a suspect is "in custody" for purposes of a stationhouse interview:  (1) did the suspect voluntarily drive himself to the station for the interview; (2) was the suspect told at beginning of the interview or at other times thereafter that he was "free to leave;" (3) was the suspect interviewed by only one officer; (4) what was the tone of officer conducting the interview and did he or she express "anger or aggression" during the questioning; (5) "was a condition of custody created by the fact that [the officer] persuaded [the suspect] to talk by confronting him with inculpatory evidence;" and (6) at the point during the interview when *Miranda* warnings were given, was the suspect arrested or told he was no longer free to leave.

The Court will now apply the six *Huether* factors to determine, if it any point before he received his *Miranda* warnings, Breeden's interview with Investigator Bryant became "custodial."

First, the transcript of the interview unequivocally reflects that Investigator Bryant told Breeden that he was "not under arrest [and] . . . free to leave whenever

16

you want." *Tr. 427*. Second, there is nothing in the transcript of the interview or in Investigator Bryant's trial testimony which suggests that Breeden's freedom of movement was restricted while he was in the interview room or that he was handcuffed.[7] Third, Breeden voluntarily agreed to the interview, and drove to the sheriff's office to talk with Investigator Bryant.

The fourth factor, whether Investigator Bryant employed "strong arm" tactics, also weighs in favor of the questioning being a "non-custodial" interrogation. The transcript of the interview reflects that Investigator Bryant was firm, but respectful toward Breeden, and there was no suggestion he was angry or aggressive in his questioning. At most, Investigator Bryant asked Breeden leading and arguably disingenuous questions, but he did not engage in anything that might be deemed "strong-arm tactics."[8] Fifth, the "atmosphere" of the interview could be considered to be "police dominated" only insofar as it took place in the sheriff's office, after business hours; but Investigator Bryant was the only officer present in the room during the interview, and he asked all the questions. Finally, at the conclusion of the interview, Breeden was arrested, but Investigator Bryant administered *Miranda* warnings immediately after he informed Breeden that "I'm gonna have to . . . take you into custody[.]"

---

[7] In his habeas papers, Breeden claims that Investigator Bryant locked the door of the interview room. *Doc. 1 at 52-53*. *If* this happened, Breeden said nothing about it during the interview.

[8] For example, early in the interview, Investigator Bryant tells Breeden: "I just, I want you to be honest with me. [Inaudible]. Even when it's uncomfortable, okay, because it's the best thing. It's the best thing for both of us. And I don't want you to look bad." *Tr. 428*.

After balancing all of these factors, the Court concludes that they weigh in favor of Breeden's interview being non-custodial, up until the point Investigator Bryant tells Breeden that he is going to arrest him. Accordingly, the Arkansas Supreme Court correctly determined that, because Breeden "cannot establish that a motion to suppress would have had merit, he has failed to state a claim for ineffective assistance of counsel." *See Breeden, supra*, 432 S.W.3d at 624. As a result, its decision "fit[s] within the matrix" of clearly established federal law, and was not  based on an "unreasonable determination of the facts." *See* 28 U.S.C. § 2254(d) and (e).

Accordingly, the Court concludes that this ineffective assistance of counsel claim is without merit.

### 4.    Trial Counsel's Failure to Move to Dismiss Based on Alleged Speedy Trial Violations

Finally, Breeden argues that his trial counsel was ineffective for failing to move to dismiss the charges based on a speedy trial violation. Breeden was arrested and detained on August 28, 2010. He was tried on December 14, 2011, 475 days after his arrest. *See* Ark. R. Crim. P. 28.1 and 28.2 (generally requiring a criminal defendant to be tried within twelve months from the date of arrest, after excluding periods of "necessary delay)."

As a matter of law, a violation of the Arkansas Speedy Trial Act is *not* cognizable in a § 2254 habeas action because it is a state law violation. *See Poe v.*

18

*Caspari,* 39 F.3d 204, 207 (8th Cir. 1994). Thus, the Court will construe Breeden's claim as alleging a Sixth Amendment violation of his right to a speedy trial. However, for such a Sixth Amendment claim to be viable, Breeden must make "[a] showing of prejudice," *i.e.*, he must demonstrate how he was prejudiced by the delay in his trial.[9] *See Taylor v. Roper*, 561 F.3d 859 (8th Cir. 2009) (*quoting Reed v. Farley*, 512 U.S. 339, 353 (1994)).

The Arkansas Supreme Court held that, because 143 of the 475 days of trial delay were attributable to Breeden, he could not demonstrate any prejudice:

> The trial court found that 143 days had been properly excluded from the speedy-trial calculation based on periods of delay resulting from a motion to continue filed by defense counsel, a mental evaluation of appellant, the scheduling of a suppression hearing, and docket congestion. When these periods of delay are excluded from the 475–day period, 332 days are left, which was within the one-year period of speedy trial. [Breeden] fails to show on appeal that these periods of delay should not have been excluded from the speedy-trial calculation such that counsel could have made a successful argument based on a speedy-trial violation. Accordingly, he fails to demonstrate the prejudice required by *Strickland*.

*Breeden*, *supra*, 432 S.W.3d at 625-626.

Nothing in Breeden's habeas papers suggests how, if at all, he was prejudiced by the alleged Sixth Amendment speedy trial violation. Accordingly, the Arkansas Supreme Court's speedy trial analysis was not an unreasonable application of the federal law. *See United States v. Shepard*, 462 F.3d 847, 864-65 (8th Cir. 2006) (17-month delay was not a speedy trial violation where the

---

[9] In evaluating a Sixth Amendment speedy trial violation, four factors must be balanced: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice resulting from the delay. *Barker v. Wingo*, 407 U.S. 514, 529 (1972).

defendant, among other deficiencies, failed to show prejudice to his case); *United States v. Brown*, 325 F.3d 1032, 1034-35 (8th Cir. 2003) (a three-year delay did not relieve the defendant of the requirement of showing prejudice).

Accordingly, the Court concludes that this ineffective assistance of counsel claim is without merit.

### C.   Alleged Violation of Breeden's Fifth Amendment Right Against Self-Incrimination

Finally, Breeden asserts that his Fifth Amendment rights were violated, during the August 26, 2010 "interview," because it was a "custodial interrogation" which required Investigator Bryant to warn Breeden of his *Miranda* rights, *before* the interrogation began.

Although Breeden's appellate counsel filed an *Anders* "no-merit" brief on direct appeal, Breeden filed *pro se* points for reversal, which included the argument that his confession should have been suppressed because it was made without him receiving *Miranda* warnings. On direct appeal, the Arkansas Supreme Court held that this argument was not preserved for review because it was raised for the first time on appeal.[10] *Breeden, supra*, 427 S.W.3d at 10.

---

[10] By withdrawing the Motion to Suppress, Breeden's attorney deprived the trial court of the opportunity to decide the *Miranda* issue. As a result, Breeden was forced to raise this issue for the first time on direct appeal.

During Breeden's Rule 37 proceeding, he again raised the *Miranda* issue, but this time in the context of arguing that his trial counsel was constitutionally ineffective for withdrawing the Motion to Suppress. As previously explained, the Arkansas Supreme Court properly rejected that ineffective assistance of counsel claim.

Accordingly, Breeden has procedurally defaulted the claim that his Fifth Amendment rights were violated during the August 26, 2010 interview with Investigator Bryant. While ineffective assistance of counsel may constitute "cause" to excuse procedural default, the Court has previously addressed and rejected Breeden's argument that his trial counsel was ineffective in withdrawing the Motion to Suppress. Thus, there is no equitable basis for excusing Breeden's procedural default of this claim.

### III. Conclusion

IT IS THEREFORE RECOMMENDED that the Petition for a Writ of Habeas Corpus be DENIED, and that the case be DISMISSED, WITH PREJUDICE. IT IS FURTHER RECOMMENDED THAT a Certificate of Appealability be DENIED pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases.

Dated this 28th day of June, 2016.

UNITED STATES MAGISTRATE JUDGE